The plaintiff administratrix brought this action to recover damages for the death of her husband, which she alleges was caused by the negligence of defendant. The case is here on appeal from a judgment of nonsuit upon the evidence suffered in the court below. We summarize pertinent parts of plaintiff's evidence:
It appears from this evidence, principally from the testimony of Prof. Lambe, who surveyed the premises, and the maps to which it refers, that the collision out of which the action arose occurred near New London, some distance South of Asheboro, at or near the point where Highway 49-A and Highway U.S. 52 merge into one road, which continues southward and for convenience is designated by both numbers.
Traveling the highway in a northerly direction across the juncture, it is found that Highway 49-A continues in an almost straight line, *Page 255 
while Highway U.S. 52 makes a considerable angle to the left, and it is so indicated on a warning road sign placed south of the junction. Highway 49-A from the junction northward has a gravel-asphalt pavement, and Highway U.S. 52 has a continuous concrete pavement. Traveling north and approaching the junction from the south, there is a sign reading HIGHWAY SLOW JUNCTION, with the word "SLOW" in glass-raised letters. The sign is 3 feet square, and the top of the sign is 5.6 feet above the ground. The next sign is a traffic representation of the intersection showing the angle indicating the left-hand departure of U.S. Highway 52 and the straight road ahead. 49-A beyond the intersection would be a straight road, and the prong in the symbol would be U.S. Highway 52 beyond the point of the intersection. Highway 49-A has only a slight curve. There is another sign upon approaching the intersection marked U.S. 52 LEFT — the "LEFT" indicates a left-hand turn at that intersection. The two roads past the intersection are of two different types of surfacing, but both hard surfaced. The area between the roads for some distance has a paving on which to drive in through a filling station located between the roads. This area is within the limits of the town of New London.
The grade is not uniform along Highway 49-A and U.S. 52, but there is an up-grade on U.S. 52 going north at the place of the collision. Coming south on Highway 49-A, there is a sign with the highways graphically represented, indicating the angle of the intersection, and showing that U.S. Highway 52 forked off to the right. This was 44 1/2 feet from the next sign. This was marked JUNCTION U.S. 52. From the junction sign to the next is 200 feet. This sign was 5.9 ft. from the edge of the pavement, hexagonal, 3 ft. high and 4.7 ft. from the ground. It was marked THRU STOPTRAFFIC. Letters were large and plainly visible. The next sign is in the no-paved area between the roads, having upon it the word "STOP," which could be read easily by autoists on the right-hand side of the road when traveling that road. All these signs were placed by the Highway Commission. There was no obstruction to prevent seeing the signs, except possibly at some points, the grade.
Relatively on the north and the south of the junction of the roads were driveways leading to the west into the Price residence on the north and the school property on the south, and the accident occurred between these driveways. From the front edge of the filling station and measured along the highway, it is 499 ft. down to the school driveway. The collision occurred near the northern edge of the school driveway.
Some distance northward of this point the white line designating the middle of 49-A had been discontinued, and one line designating the middle of U.S. 52 was continuous in each direction. The collision *Page 256 
occurred on the west side of the road, the right forward end of the truck striking the left forward end of the automobile. The truck continued for some distance, running up on a 3 ft. bank on the west side of the road, where it stopped without turning over. The automobile was knocked back some distance down the road in a northwesterly direction, and came to rest on the west side. Plaintiff's intestate was thrown clear of the wreckage on the western bank at some distance north of the point of collision, where he died almost instantly, and his companion was left hanging out of the car. He was seriously injured, but recovered. From the markings on the ground and pavement, it appeared that the truck traveled from the place of collision a distance of some 80 or more feet, with one of the wheels broken down and dragging. The automobile was found some distance beyond.
Plaintiff's exhibit No. 3, which is a photograph, and the evidence which it is used to explain, indicate that the collision occurred at the north edge of the school driveway, where the roads had almost, if not quite, merged into one.
Glin E. Poplin, witness for the plaintiff and the only eye witness examined on the trial, testified that he was standing on the left side of the highway near the scene of the collision at the time it occurred, near the entrance to the school grounds. It was after school hours, between 3:30 and 4 o'clock. He identified the pictures used in illustration of the evidence, and pointed out places referred to in the testimony.
The witness was standing with his face turned somewhat towards the south and saw the approach of the truck, estimating its speed as 25 or 30 miles. He first saw the automobile when the truck and automobile were 30 ft. or more apart. "When the collision occurred the truck took to the west, more or less to the west. It kept in a straight course then. The automobile took to the north, in other words, sort of northwest." Upon cross-examination, he testified that he had made a statement shortly after the accident, and upon excerpts of this statement having been read to him, he reasserted their truth. That testimony is substantially to the effect that he first saw the automobile immediately after its brakes were applied, and that his attention was called to it by the screaming of the brakes; that the Buick was coming south on 49-A, and the tractor was going north on U.S. 52. At the moment he observed the Buick, it was only about 25 or 30 ft. from where the west side of 49-A, which is black surface, comes into the east side of U.S. 52, which is white concrete, and the Buick was traveling about 70 miles per hour. Witness estimated that the Buick came to rest about 20 ft. in front of the tractor and across Price's drive. One of the occupants of the Buick was thrown to a point on the western dirt shoulder about 10 or 12 ft. behind the truck after it had stopped. The distance from *Page 257 
the point of impact to where the front of the tractor came to a stop was estimated at 30 to 35 ft.
Upon this evidence of plaintiff, defendant demurred and moved for judgment as of nonsuit, which was allowed. The plaintiff appealed.
The evidence in this case is largely circumstantial. There are certain things, however, that seem indicated:
The collision occurred where the two roads had almost, if not quite, merged into one; it occurred on the west side of the road, which would be in Anderson's lane of traffic going south, and on the wrong side for the truck going north; the truck struck the Anderson car on the left forward end with its own right front end, indicating a sharp turn to the left had been made by the truck; the force of the collision was sufficiently great to throw Anderson's body for a considerable distance up on the bank to the west, and sent the Anderson car a distance of some 100 ft., or more, to the northwest, in a direction opposite to that it was traveling; the truck, in its broken-down condition, appeared to have traversed some 80 ft. or more after the accident and run part way up the embankment. We think it must be conceded, from the evidence, that the Anderson car came out of the eastern branch of the road where the signs were marked as indicated. That would give both vehicles, at the junction point, a common area which must be traversed by the drivers of the meeting cars with prudence and with the care required by both the common and statute law.
It is insisted that if the truck had kept to its own side of the road, the Anderson car might have passed in safety, since it appears to have traversed the common ground of the junction and gotten on its right side of the road before the collision. We have considered that. But nevertheless, the evidence indicates to us that both vehicles were approaching the junction at a greater speed than prudence demanded at the risk of occupying it at the same time with disastrous results. If it be conceded that there is evidence of negligence on the part of defendant, applying the standards required by precedent, we are unable to escape the conclusion that the negligence of plaintiff's intestate made some contribution to his injury.
The judgment as of nonsuit is
Affirmed. *Page 258